UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| BRIAN LAMAR BROWN, | ) | |
| | ) | |
| Petitioner, | ) | 2:02-cv-00770-PMP-PAL |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| BILL DONAT, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner. Before the Court is respondents' motion to dismiss the amended petition. (ECF No. 37; ECF No. 48).[1]

**I. Procedural History**

Following a jury trial, the Second Judicial District Court for the State of Nevada found petitioner guilty on Count I, murder in the second-degree with the use of a deadly weapon, with a sentence of life with the possibility of parole, with a consecutive sentence of life with the possibility of parole for the deadly weapon enhancement; on Count II, attempted murder with the use of a deadly weapon, with a sentence of 48-240 months, with a consecutive sentence of 48-240 months for

---

[1] Respondents filed a notice of a corrected image of the motion to dismiss, at ECF No. 48.

the deadly weapon enhancement, to be served consecutive to Count I. (Exhibits 75, 76).[2] The jury acquitted petitioner of Count III, grand larceny. (Exhibits 68, 70). Petitioner appealed. (Exhibits 77, 81). On July 16, 1999, the Nevada Supreme Court upheld the conviction. (Exhibit 84). Remittitur issued on August 11, 1999. (Exhibit 85).

      Petitioner filed his first state habeas petition in the state district court on June 30, 2000. (Exhibits 99, 100). The State filed an answer and a motion to dismiss. (Exhibits 103, 104). Petitioner filed a *pro per* reply to the motion to dismiss. (Exhibit 105). Petitioner's appointed counsel filed a response to the motion to dismiss, in which he abandoned many of the claims contained in the petition. (Exhibit 106). The state district court held an evidentiary hearing on May 9, 2001. (Exhibit 115). On May 17, 2001, the state district court filed its findings of fact, conclusions of law and order denying the petition. (Exhibit 117). Petitioner appealed the denial of his state habeas petition. (Exhibit 119). Petitioner argued that "the district court erred in denying appellant's habeas claim that he was improperly denied a jury instruction critical to his theory of the case." (Exhibit 136, at p. 7). On March 28, 2002, the Nevada Supreme Court affirmed the denial of the state habeas petition. (Exhibit 159). Remittitur issued on April 23, 2002. (Exhibit 161).

      On May 30, 2002, petitioner dispatched his original federal habeas petition to this Court. (ECF No. 5). Respondents filed a motion to dismiss the petition as unexhausted. (ECF No. 14). Petitioner filed an opposition in which he raised an additional claim, labeled "Ground 1A." (ECF No. 19). On November 24, 2003, this Court entered an order granting, in part, respondents motion to dismiss. (ECF No. 20). The Court found that Grounds 1, 2, 7-16, and 18 were unexhausted. (*Id.*). The Court found that Grounds 3-6, 17, and Ground 1A were exhausted. (*Id.*). This Court gave petitioner his options under *Rose v. Lundy*. (*Id.*). Petitioner chose to dismiss without prejudice his unexhausted claims and return to state court. (ECF No. 21). By order filed December 16, 2003,

---

[2] The exhibits referenced in this order are found in the Court's record at ECF Nos. 38-47.

this Court dismissed without prejudice petitioner's unexhausted claims at Grounds 1, 2, 7-16, and 18, pending petitioner's return to state court to exhaust those claims. (ECF No. 22). On May 6, 2005, an order was entered administratively closing the case pending exhaustion of petitioner's claims in state court. (ECF No. 23).

On January 21, 2004, petitioner filed his second state habeas petition. (Exhibit 176, 177). Petitioner supplemented his second state habeas petition on August 2, 2004. (Exhibit 184). Following an evidentiary hearing, the state district court filed findings of fact, conclusions of law and order dismissing the petition on August 1, 2006. (ECF No. 200, 203).

Prior to the conclusion of the second state habeas petition in state court, on January 27, 2004, petitioner filed a petition for a writ of certiorari directly with the Nevada Supreme Court. (Exhibit 179). The Nevada Supreme Court construed as a petition one for extraordinary relief and denied the petition by order filed April 8, 2004. (Exhibit 182). The Nevada Supreme Court clarified that, in its order of March 28, 2002, affirming the denial of petitioner's first habeas petition (Exhibit 159), it considered only those claims specifically addressed in the state district court's order denying the petition. (Exhibit 182). The Nevada Supreme Court clarified that it considered only the following claims: (1) a challenge to restitution; (2) a claim that trial counsel was ineffective for failing to seek dismissal of the larceny charge; and (3) a claim that the district court erroneously rejected petitioner's proffered self-defense jury instruction. (Exhibit 182, at p. 3, n.4).

On August 10, 2004, petitioner filed a second petition for a writ of certiorari. (Exhibit 187). The Nevada Supreme Court denied the petition by order filed August 26, 2004, finding that the Court's intervention by way of extraordinary writ was not warranted. (Exhibit 188).

Petitioner appealed the denial of his second state habeas petition. (Exhibits 205, 210). By order filed September 6, 2007, the Nevada Supreme Court affirmed the dismissal of petitioner's second state habeas petition. (Exhibit 212). The Court ruled that the second state habeas petition was untimely and successive. (*Id.*). Remittitur issued on October 2, 2007. (Exhibit 213).

On October 4, 2007, petitioner filed a third petition seeking extraordinary relief from the Nevada Supreme Court. (Exhibit 216). The Nevada Supreme Court denied the petition, declining to exercise original jurisdiction. (Exhibit 217).

On October 5, 2007, petitioner filed a motion in this Court to extend the stay so that he could continue to pursue state court remedies. (ECF No. 24). This Court granted petitioner's request and extended the stay pending final exhaustion of petitioner's claims in state court. (ECF No. 25).

On December 10, 2007, petitioner filed an amended petition and an amended supplemental petition, which is referred to collectively as "amended petitions" in this order unless otherwise noted. (ECF No. 26, 26-2, 26-3). The amended petitions contain sixteen grounds for relief. (*Id.*). The amended petition was not accompanied by a motion to reopen the case. (*Id.*).

On June 6, 2012, this Court ordered the federal action reopened. (ECF No. 32). Respondents have filed a motion to dismiss the amended petitions. (ECF No. 37; ECF No. 48 (corrected image)). Respondents argue that the amended petitions are untimely, unexhausted, procedurally barred, and that some claims are not cognizable. (*Id.*). Petitioner has filed a response to the motion. (ECF No. 49). Respondents have filed a reply. (ECF No. 52).

**II. Discussion**

**A.  AEDPA Statute of Limitations**

Respondents argue that all grounds of the amended petitions, with the exception of a portion of Ground 3(3), do not relate back to the original petition and are therefore untimely.

**1.  Relation Back Under *Mayle* and *King v. Ryan***

The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the statutes controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of federal habeas corpus petitions. With respect to the statute of limitations, the habeas corpus statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the

4

judgment of a State court. The limitation period shall run from the latest of–

>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

Under Federal Rule of Civil Procedure 15, an amended pleading "relates back" to the original pleading only if the acts described in the amended pleading are set forth in the original pleading. Fed. R. Civ. P. 15(c)(2). An amended habeas petition only relates back if the amended claims are tied to the "same core of operative facts" as alleged in the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). In *Mayle*, the petitioner originally raised only a Confrontation Clause claim in his habeas petition, based on the admission of video-taped prosecution witness testimony. 545 U.S. at 648-49. After the one-year AEDPA statute of limitations had passed, petitioner then sought to amend his habeas petition to allege a Fifth Amendment claim based on coercive police tactics used to obtain damaging statements from him. *Id.* The factual basis for each claim was distinct. Petitioner then argued that his amended claim related back to the date of his original habeas petition because the claim arose out of the same trial, conviction or sentence. *Id.* at

5

659-661. In rejecting petitioner's argument the Supreme Court held that if "claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

In the order of November 24, 2003, this Court determined that the AEDPA statute of limitations within which to file a federal habeas petition in this matter expired on July 12, 2002. (ECF No. 20, at p. 20) (citing *Duncan v. Walker*, 533 U.S. 167 (2001) (the filing of a federal habeas petition does not toll the AEDPA's statute of limitations period). Petitioner filed his amended petitions on December 10, 2007, well after the statute of limitations expired. (ECF No. 26, 26-2, 26-3). Therefore, the Court must determine if the claims raised in the amended petitions relate back to the original petition and opposition (which contains Ground 1A).

In addressing respondents' original motion to dismiss, this Court found only Grounds 3-6 and 17 of the original petition, and Ground 1A raised in the opposition, exhausted. (ECF No. 20, at pp. 10, 12). Petitioner chose to abandon the remaining exhausted claims in his petition and to stay the remaining petition so that he could return to state court, initiating a *Kelly* stay. *See Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). The Court accepted petitioner's abandonment of the claims, dismissed Grounds 1, 2, 7-16, and 18 of the original petition without prejudice, and ordered the action stayed pending petitioner's return to state court to exhaust his claims. (ECF No. 22).

In keeping with *Mayle*, claims filed after a *Kelly* stay must relate back to claims properly contained in the original petition, that is, those claims that were fully exhausted in the original petition. *King v. Ryan*, 564 F.3d 1133, 1142 (9th Cir. 2009). In *King v. Ryan*, the Ninth Circuit ruled:

> Because King's nine new claims are the same as the nine unexhausted claims he attempted to include in his original petition, he asserts, the new claims are sufficiently related to the original filing to be considered timely under *Mayle*.

> We disagree. The only sensible interpretation of *Mayle* is that it requires new claims to relate back to claims that were exhausted at the time of filing. Only this interpretation of *Mayle* comports with *Duncan's* reasoning about the goal of exhaustion in habeas cases. Wary of "creat[ing] . . . opportunities for delay and piecemeal litigation without advancing the goals of comity and federalism that the exhaustion requirement serves," 533 U.S. at 180, 121 S.Ct. 2120, *Duncan* concluded that AEDPA's statute of limitations period must continue to run while federal habeas proceedings are pending. 533 U.S. at 172, 121 S.Ct. 2120. "By tolling the limitation period for the pursuit of state remedies and not during the pendency of applications for federal review," *Duncan* reasoned, "[we] provide [ ] a powerful incentive for litigants to exhaust all available state remedies before proceeding in the lower federal courts." *Id.* at 180, 121 S.Ct. 2120. Reading *Mayle* to permit post-exhaustion amendments to "relate back" to any claims included in but then dismissed from the original complaint, as King suggests we should, would be equivalent to abandoning *Duncan* and simply tolling AEDPA's statute of limitations period for the entire period during which a petitioner has a petition pending in federal court, so long as the petitioner had the foresight to include all of his unexhausted claims in the petition when he initially filed it.
>
> Rejecting such a self-defeating interpretation, we hold that *Mayle* requires a comparison of a petitioner's new claims to the properly exhausted claims left pending in federal court, not to any earlier version of the complaint containing claims subsequently dismissed for failure to exhaust. *Cf. Rasberry v. Garcia*, 448 F.3d 1150 (9th Cir. 2006) (holding that a habeas petition filed after the district court dismissed a previous petition without prejudice for failure to exhaust state court remedies does not automatically "relate back" to the filing date of the original petition). *Mayle* thus requires a more detailed inquiry than King suggests. The question is whether his nine newly exhausted claims relate back to the one claim in his original habeas petition that was exhausted to begin with . . . .

*Id.*, at 1142. In the instant case, the only claims this Court found exhausted in the original petition were Grounds 3-6 and 17 of the original petition, and Ground 1A contained in the opposition. (ECF No. 20). The Court now considers whether the claims in the amended petitions relate back to each properly exhausted ground of the original petition.

/ / / / / / / / / / /

/ / / / / / / / / / /

/ / / / / / / / / / /

7

### 2. Ground 3

In Ground 3 of the original petition, petitioner alleged prosecutorial misconduct during closing arguments when the prosecutor misstated facts presented to the jury, including: (1) the prosecutor repeatedly stated that the defendant waited until the victims had their backs to him, then shot them in the back; (2) the prosecutor made statements concerning the manner in which forensic evidence was taken that was never entered into evidence; (3) the prosecutor made disparaging remarks attempting to discredit the defendant's expert medical witness; (4) the prosecutor misstated testimony of two witnesses regarding the victims walking past petitioner in returning to their car; (5) the prosecutor misrepresented forensic evidence; and (6) the prosecutor misstated evidence as to petitioner trying to assist the victims. (ECF No. 5, at pp. 9-18).

In Ground 11 of the amended supplemental petition, petitioner alleges that the prosecutor committed misconduct during closing arguments. (ECF No. 26, at pp. 32-33). Petitioner alleges that the prosecutor committed misconduct by "repeatedly adding his own personal comments in an effort to vouch for the witnesses or evidence." (*Id.*, at p. 33). Petitioner lists examples of misconduct which consist of nine comments in which the prosecutor stated that petitioner was a "murderer." (*Id.*). Petitioner further alleges that the trial court "acted improperly in trying to cure any possible prejudice resulting from the remarks." (*Id.*). Petitioner alleges that the trial court erred by failing to sustain the prosecutor's remarks and in failing to issue cautionary instructions. (*Id.*). Petitioner also alleges that his counsel failed to object to the prosecutor's remarks. (*Id.*).

The allegations in Ground 11 of the amended supplemental petition arise from a different core of operative fact from the facts presented in Ground 3 of the original petition. Petitioner's general reference to prosecutorial misconduct in both the original and amended petitions is not sufficient to meet the minimum standard that it arises from the same core of operative facts. The prosecutor's statements referred to in the original petition are not the same type of statements, comments, or details listed in Ground 11 of the amended supplemental petition. Rather, in Ground

1 11, the only comments petitioner refers to are statements in which the prosecutor called him "a
2 murderer." There is no reference to such statements in the original petition. Additionally, in the
3 original petition, petitioner did not allege that the state district court erred or that his counsel erred
4 regarding the prosecutor's remarks, as he alleged in Ground 11 of the amended supplemental
5 petition. As such, the claims regarding court or counsel error in Ground 11 arise from a different
6 type than those raised in the original petition. Because Ground 11 does not relate back to the
7 original petition, it is untimely. *See Mayle v. Felix*, 545 U.S. at 664.

### 3. Ground 4

9 In Ground 4 of the original petition, petitioner alleged that the trial court refused to allow
10 evidence of specific acts regarding the character of the victims pursuant to state law. (ECF No. 5, at
11 pp. 22-24). Petitioner does not raise this ground in the amended petitions. (ECF Nos. 26, 26-2, 26-
12 3).

### 4. Grounds 5 and 1A

14 Ground 5 of the original petition alleges that the trial court refused to give the self-defense
15 jury instructions offered by the defense. (ECF No. 5, at pp. 26-28). Ground 1A of the original
16 petition alleges that the state district court erred in denying the state habeas claim that the trial court
17 erred in denying a jury instruction critical to his theory of the case. (ECF No. 19, at pp. 9-13).

18 Ground 1 of the amended petition alleges that petitioner's counsel was ineffective for failing
19 to prepare and offer jury instructions regarding petitioner's state of mind/self-defense theory based
20 upon his medical condition. (ECF No. 26-3, at p. 3). Petitioner further states that while defense
21 counsel introduced proposed jury instructions on self-defense, reasonable doubt and first-degree
22 murder, he did not provide a jury instruction based upon petitioner's diabetes or hypoglycemia. (*Id.*,
23 at p. 4).

24 Ground 1 of the amended petition arises from a different core of operative facts than the
25 allegations in Grounds 5 and 1A of the original petition. In the original petition, petitioner alleges

9

that a different actor, the state district court, erred in refusing to give the jury instructions proposed by the defense. In contrast, in Ground 1 of the amended petition, petitioner does not address the jury instructions proposed by the defense and rejected by the state district court, but instead challenges the actions of his counsel for failing to provide additional jury instructions. Ground 1 of the amended petition does not relate back to the original petition and therefore it is untimely.

### 5. Ground 6

In Ground 6 of the original petition, petitioner alleges that the trial court refused to give a jury instruction regarding the burden of proof by the prosecution. (ECF No. 5, at p. 30).

In Ground 2(3) of the amended petition, petitioner alleges that he was prejudiced by the jury instruction regarding reasonable doubt. (ECF No. 26-3, at pp. 6-7). In the original petition, by contrast, petitioner alleges only that the trial court gave a jury instruction that was prejudicial. There is no reference to the court refusing to give requested jury instructions or other proffered instructions. The allegation in the amended petition arises from a different time – when the defense requested a specific jury instruction, as opposed to when the trial court gave the final jury instructions. The allegation in the amended petition arises from a different type – the refusal to give a requested instruction versus the instruction that was actually given. The claim does not relate back and is therefore untimely.

### 6. Ground 17

In Ground 17 of the original petition, petitioner alleges that he received ineffective assistance of counsel when counsel failed to challenge Count III, grand larceny, after the justice court abused its discretion by binding petitioner over to the state district court based on a substantial mistake of fact. (ECF No. 5, at p. 69).

In Ground 3(3) of the amended petition, petitioner alleges that counsel failed to file proper pretrial motions, including a motion to dismiss and suppress the grand larceny charge. (ECF No. 26-3, at p. 9). This portion of Ground 3 relates back to the original petition.

10

1  Petitioner further alleges in Ground 3(3) that counsel failed to move to suppress pretrial
2  transcripts, failed to file a motion to subpoena witnesses, and failed to call several witnesses. (ECF
3  No. 26-3, at pp. 9-10). These additional arguments do not relate back to Ground 17 of the original
4  petition because there was no reference to the additional motions or witnesses.

5  Ground 3(3), to the extent petitioner alleges that counsel failed to file a pretrial motion to
6  dismiss the grand larceny charge, relates back to the original petition. All remaining portions of
7  Ground 3 do not relate back and are therefore untimely.

### 7. Remaining Grounds

9  The remaining grounds of the original petition were found to be unexhausted. (ECF No. 20,
10 at p. 10). To the extent that petitioner elected to dismiss the previously unexhausted claims from the
11 original petition, under the holdings of *King, Duncan, and Mayle*, any claims which petitioner
12 dismissed from the original petition may not relate back when raised again in the amended petition.
13 This includes Grounds 1, 2, 3(1), 3(2), and portions of 3(3) of the amended petition, and Grounds 4-
14 14 of the amended supplemental petition. (ECF No. 26, 26-2, 26-3).

15 Additionally, Grounds 14-16 of the amended supplemental petition do not relate back to the
16 original petition. These grounds rely upon a core of operative facts that were never presented in the
17 original petition. These ground are therefore untimely and subject to dismissal.

### B. Ground 3(3) is Denied on the Merits

19 As earlier stated, to the extent petitioner alleges that counsel failed to file a pretrial motion to
20 dismiss the grand larceny charge, Ground 3(3) relates back to the original petition. This is the only
21 portion of the amended petition that is timely. Although respondents go on to argue that several
22 grounds of the amended petition are unexhausted, including Ground 3(3), the Court does not reach
23 those arguments. A district court may ignore the petitioner's failure to exhaust state remedies and
24 instead reach the merits of the petition. *See* 28 U.S.C. § 2254(b)(2); *Padilla v. Terhune*, 309 F.3d
25 614, 620-21 (9th Cir. 2002); *see also Gatlin v. Maddling*, 189 F.3d 882, 889 (9th Cir. 1999).

### 1. Standard for Review on the Merits

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more

than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2. Ground 3(3) of the Amended Petition

In Ground 3(3) of the amended petition, petitioner alleges that counsel failed to file a motion to dismiss and suppress the grand larceny charge. (ECF No. 26-3, at p. 9). This claim was included in petitioner's first habeas petition. (Exhibit 96). The state district court appointed counsel to represent petitioner in litigating the petition. (Exhibit 97). The state district court held an evidentiary hearing concerning the petition on May 9, 2001. (Exhibit 115). On May 17, 2001, the state district court filed its findings of fact, conclusions of law and order denying the petition. (Exhibit 117). In addressing petitioner's claim that trial counsel was ineffective for failing to seek dismissal of the larceny charge, the state district court ruled as follows:

> Brown raised several claims relating to the larceny charge. Most, including the assertion that the prosecutor knowingly presented perjured testimony, were abandoned. Instead, Brown claimed only that his trial counsel should have sought dismissal of the charge before trial. The court finds that no legitimate grounds for pre-trial dismissal were available to counsel. The court further finds that the facts supporting the charge, that Brown drove off from the scene the shooting in the victim's car, would have been admissible as part of the res gestae of the crime.

(Exhibit 117, at p. 3). The Nevada Supreme Court affirmed the state district court's ruling on appeal. (Exhibit 159; Exhibit 182, at p. 3, n.3).

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v.*

*Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct. 1411, 1413 (2009)).  In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted).  Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.  The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at 1420.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).

In the instant case, this Court finds that counsel was not ineffective for his decision to not file a motion to dismiss the larceny charge.  As found by the state district court, there was no legitimate ground for pretrial dismissal of the larceny charge, thus, counsel was not deficient.  Moreover, petitioner was acquitted of the larceny charge.  Petitioner has failed to demonstrate that any prejudice resulted from counsel's decision not to file a motion to dismiss the larceny charge.  Petitioner has failed to meet his burden of proving that the state courts' ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding. This Court denies habeas relief on the entirety of Ground 3(3) of the amended petition.

### III. Conclusion

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss the petition (ECF No. ECF Nos. 37 (corrected image ECF No. 48)) is **GRANTED.**

**IT IS FURTHER ORDERED** that, as to the remaining Ground 3(3) of the amended petition, the Court **DENIES** habeas corpus relief on the merits.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this 4th day of July, 2013.

_____
UNITED STATES DISTRICT JUDGE